Ladies and gentlemen, we have five cases on the table this morning, four patent cases, one from the state district court, three from the PTAF, and a veteran's case that's being reviewed. Our first case is Oyster Optics v. Alcatel-Lucent, 2019, 1255. Mr. Merzegh? Yes, Your Honor. Thank you. Good morning. May it please the court. This court should reverse the district court's summary judgment because the district court committed legal errors in misinterpreting the Oyster-Fujitsu Agreement, or the OFA for short, in two separate ways. Each way requires reversal. First, it erred in interpreting section 1.3 under the headings of definition, and specifically with regard to licensed products, quote unquote, capital L, capital P, incorrectly, in a way that violated four different canyons of Texas contract interpretation. And it did... Counsel, we all know that when you interpret a contract, you have to give terms that are of ordinary meaning and take into account all language in the contract. We're talking about for further clarity, right? Clarity means clarity. It doesn't mean notwithstanding the above. It doesn't mean different from the above. It means clarity. And the preceding language is very clear in providing an open, broad license. So how did the district court err? The district court erred, Your Honor, by misinterpreting that clause because although it begins with for clarity, what it says in both for clarity clauses is that the definition does not prevent Oyster from exercising certain patent rights. And so it should be read together as a at the very least, the for further clarity clause refers back to the first sentence of 1.3. And because it refers back to the first sentence of 1.3, it should be applied under normal contract principles, whether it's part of the definition or whether it's simply referring back to it. You wouldn't say this is a well-drafted provision, would you? It's frankly a mess. Admittedly, Your Honor, it could have been drafted more clearly. However, that question should not control here because other issues require reversal. And if the question about how it could be drafted more clearly was really relevant, the parties could have put the for clarity only in section 4.1. The contracting parties did not. It was in section 1.3. But the district court's misinterpretation applied that for further clarity clause only to the reference back to licensed products in 4.1 and not in 3.1. Let's assume for the moment that we put the future tense, present tense theory to the side that one of the observations the district court made. Nevertheless, we still have to look at 1.3. And why can't 1.3 just be communicating, here's the definition for the category of something called licensed products, and there's nothing in this definition that restricts the patent owner from exercising any of its patent rights. This is just only about defining the category of products called licensed products. And then there are other provisions, other sections, which regulate and restrict how and when the patent owner, Boyster, can exercise its patent rights. What is wrong with looking at the overall structure of the release agreement that way? We don't disagree that you have to look at the structure of the entire release agreement, but how the court erred is when you look at the overall structure, it applied the for further clarity clause only to 4.1 when the capital L, capital P term was used, and not to 3.1 where the same term is used. And so that violates contract law, Texas law, which requires applying it the same throughout the contract. Secondly, its basis for doing so was that the contracting parties merely were restating the known law of exhaustion, and that was its basis for applying it only to the reference back to licensed products in 4.1, and not to the reference in 3.1. But under Texas contract law, and frankly the law of most states, the parties are presumed to know the law, and therefore the contract doesn't have to restate it. So the court's logic in applying that interpretation, that the parties merely with the for further clarity were restating known patent exhaustion law, doesn't hold up. It renders it purely superfluous of the law that they would have known. Not to mention, the second sentence in 1.3 doesn't even lend itself to that type of misinterpretation. It's not about exhaustion. So what you have here is a situation where the court created tension, both by not applying it in 3.1, where it shows up, and only applying it in 4.1. And again, all sides on this appeal agree that the for further clarity clause at least refers back to the first sentence. Let me ask you one question, sort of a, maybe a housekeeping type of question. The district court opinion refers to the only one that we're concerned with in this case, and that we have to be focusing on, is the 3.2.7. Correct? I believe that's correct, because that was the patent, I believe, that was asserted in the cases on appeal. But if you include the claims and analysis of the claims of the 9.5.2 patent, Your Honor, you reach the same conclusion. Because you say, though, it says on page 39 of the brief, the only claims that issue on this appeal are ones for direct infringement under 271A of the 3.2.7 patent. I read that as saying, we don't have to concern ourselves with the 9.5.2 patent at all. And there's no arguments in the briefs about the 9.5.2 patent. That's correct, Your Honor. I believe the case was narrowed since the complaint stage. And also, I believe the court's order is concerning the 3.2.7 patent, the order that's being appealed. So you are correct. And furthermore, even if you ignore the disharmony and tension created by the court's interpretation, there's a second reason that also requires clear reversal. The second reason is in 3.1 now, clearly there is a but-to-the-extent clause. And the contract appears in several places in the appendix. I'm referring now to 2318. In section 3.1, the actual release that issue, there's a clear distinction between the broad release to Fujitsu, which doesn't use the capital L, capital P reference, and the narrower release to customers, which begins with the but-only-to-the-extent clause. And it also uses the capital L, capital P, not just lowercase p, any product, but it's the capital L, capital P. Both sides in this appeal agree that the for-further-clarity clause references the first sentence of 1.3. At any rate, the point here, Your Honor, is that the but-only-to-the-extent clause was completely ignored or misapplied by the court. And this is at appendix 43. And because it was not only ignored and does not show up there, but in so misapplying it, the court effectively changed the narrowly mentioned claims for third-party rights from but-only-to-the-extent such customers, and I'll skip over a little bit here, made, offered to sell, sold, or otherwise disposed of licensed products or components of licensed products. If you look at appendix- The court found all those limitations were met. The court did find that all those limitations were met in the next section of its order, but on appendix 43, Your Honor. Yes, but I'm looking at 44. The court further finds, in the event the release is held to be so limited, such limitation is met. So, irrespective of further clarity, the court found against you. Yes, and in second holding, Your Honor, the court found that all the limitations of the 3227 were met by the Fujitsu modulator at issue, and or the Fujitsu receivers at issue, but that must be reversed as well. Whether the two Fujitsu components at issue could satisfy every element of the transceiver patent card claims, the court did not look at the actual facts of whether it can, being the scope of the claim that it had previously construed, or the evidence concerning what components of the Fujitsu products- Weren't they clearly accused of infringement in the underlying Fujitsu litigation? No, they weren't, Your Honor, and admittedly, that part of it, the back part of the record is a bit sloppy as well. There was never an infringement allegation by Oyster against Fujitsu on the Fujitsu 100-400G modulator, 100-400G receiver? There were statements in the infringement contentions, no conformal- So that's what I was referring to? Yes. So then there was an allegation that those individual components did infringe those claims? There was no formal allegation, Your Honor. There were statements that were in the preamble that admittedly in a sloppy fashion carried through to the actual other parts of the infringement contentions. However, the expert reports in the case show that Oyster's infringement expert did not analyze that product and did not include it in the case, and further show that Fujitsu, the only other party in that case, understood there to be only two products at issue in that case, and they were both transceiver modules, and this is on 4065 through 4068. Are you saying that those individual components are not included in the Fujitsu release as it relates to Fujitsu? Those individual components are included in the Fujitsu release as it relates to Fujitsu because the Fujitsu part of the release does not use capital L, capital P. It is a broader litigation release that releases all acts concerning actions in the litigation or concerning the patents for not capital L, capital P, but in contrast to the third-party rights, it's just any product. So the Fujitsu release is for any and all theories of infringement under any of your patent rights on account of any product, process, or service made, used, sold, or otherwise disposed of by Fujitsu, right? For Fujitsu, yes. And so that includes the modulator and the receiver? Yes, for Fujitsu. So any theory of infringement, and then it moves on and says, Oyster's release under Section 3.1 also shall extend to all customers, but only to the extent such customers may use, sell, or otherwise dispose of licensed products or components of the licensed products. And if we conclude that the best understanding of licensed products is any products, product lines, components, and or combination thereof made, sold, or distributed by Fujitsu, then wouldn't, therefore, this release cover any use of these modulators and receivers by Fujitsu's customers? No. And the reason why, Your Honor, the but only to the extent clause pertains to licensed products. In this case, applies have conceded that the licensed products are only the modulator that they purchase and the receiver that they purchase. And so the claims at issue in Oyster's case were for a transceiver card that has many more limitations. It would be unreasonable to read the or use or otherwise dispose of. But what I'm trying to get at is the customer's release is closely, deeply linked to Fujitsu's release. And if Fujitsu's release is for any infringement theories that are on account of any product Fujitsu makes and sells, that means any infringement theory as a result of any Fujitsu product. And so, therefore, wouldn't you also be blocked under the customer release of any infringement theory that's a result of, that relies on these very components that Fujitsu's received its release from? No, Your Honor. And that is because the Fujitsu release, the customer release in stark contrast says, but only to the extent the customers have made, offered to sell, or sold, or otherwise disposed of the modulator or the receiver. In this case, they did not purchase the transceiver cards, for example, that the, that our case was based on. So that is the distinction. The modulator and the receiver components, and that's one of the licensed products. They're components among many other components, as we spell out, that the appellees obtained from other third parties billed in a specific infringing manner into a much larger transceiver card. Our claims at issue here in the district court level were for offer for sale and sale of the transceiver card, meeting all those elements. Counsel, you've consumed all of your time, including your rebuttal time, but let's move from the other side, and we'll give you two minutes back for rebuttal. Thank you. Mr. Stevens, you'll take six minutes, and then lateral to Mr. O'Quinn. Exactly, Your Honor. Thank you. Good morning, and may it please the court. I'm Scott Stevens from Alston & Byrd on behalf of the appellee Alcatel-Lucent in this matter. Judge Gilstrap correctly applied the customer release provisions that Fujitsu had paid for and received as part of the Oyster Fujitsu Agreement, and Judge Gilstrap correctly granted summary judgment as a result. Before I get into the why, I did want to address one question, Judge Shaw, that you had asked earlier about the 952 patent. When the summary judgment motion was filed, there were still two patents pending in the litigation, but between the time they were filed and Judge Gilstrap resolved that motion, the 952 patent had been dropped. So as of the present, the only remaining infringement claim in the litigation is, in fact, the 327 patent. Okay, thank you. You're quite welcome. The application of the Oyster Fujitsu Agreement is a relatively straightforward and simple two-step process. You wouldn't call it relatively straightforward. Well, for our point of view, what we need to do first is ask the question, is it a licensed product? So is it a component? Is it a device? What's the purpose of the unless clause in 1.3? The for further clarity clause? Yes. Specifically, the final clause of the last sentence of 1.3. It begins with unless. Correct. So if you look at – and I'm going to get to the unless part, but if you look at the whole sentence, what it is doing there is it's saying just because we've anointed these products with the moniker of licensed products, just because these things might fall within the ambit of this broad definition and we use the phrase licensed product, don't take away from that that these products will be licensed in the future for any particular purpose. We need to look at other points in the agreement to figure that out. And so the for further clarity clause is saying that because of that, don't look at that. But the unless clause is, of course, consistent with generally accepted principles of an exhaustion and represents the bargain that Fujitsu and Oyster agreed to. Fujitsu and Oyster did agree that as it would relate to the future, questions of customer rights would be adjudicated under the quanta series of cases and exhaustion. That's completely different than the scope of the 3.1 release provision, which has a much more explicit language. So you think the unless clause, just so I understand, is only referring to a subcategory of the previously defined licensed products, i.e., components of the products? No, Your Honor. We believe it applies to the whole scope of the ambit of licensed products. So just so that I'm clear here, under 4.1, the forward-looking release provision, Fujitsu would have received explicitly a license to the licensed products. But it's silent as to what rights customers would get. Unlike the 3.1 release provision, the 4.1 license is silent as to customers. So what this unless is doing is saying just because we've anointed it as a licensed product doesn't mean a customer in the future will receive any particular right unless what they purchase meets the substantial embodiment test, meets the quanta test. So if they purchase entire transponders from Fujitsu, then they have a forward-looking license. If it's something less than that, then we'd have to perform the analysis that the courts have laid out relating to substantial embodiment. So you're saying it relates to patent exhaustion? As it would relate under 4.1 for the future-looking license, yes. As it relates to the rearward-looking, the past-looking release under 3.1, no, because we have an explicit… It doesn't – in your view, it doesn't have any bearing on the retrospective release, the 3.1 release. It doesn't have a practical ramification on the 3.1. It is simply saying, okay, we've decided that this modulator is a licensed product. Don't take from that definition that there's any license rights coming with it for customers. But then we read the agreement and see what we get. We read 3.1, and we see very clearly that Fujitsu and its customers have been fully released for anything on account of those products. We received a complete release for anything that we did with those modulators and receivers. And just to put this in context, again, at the time this agreement was signed in May of 2018, there was ongoing litigation with everybody. Precisely what Alcatel-Lucid and precisely what Cisco did with these modulators and receivers was facts entirely within the knowledge of Oyster. They knew exactly how we disposed and sold the modulators and receivers. They knew what we did with them, and yet they still signed this. What if we disagree with Judge Gilstrap to the extent that he said that this final sentence of 1.3 has no relevance and cannot apply in the context of 3.1? Then where does that leave me? I think what Judge Gilstrap was attempting to say in that paragraph was that the practical ramifications of what the For Further Clarity Clause is attempting to clarify has more practical applications to 4.1, the future-looking license, as opposed to 3.1, the past-looking release. I didn't take Judge Gilstrap to mean that it somehow vanishes away in 3.1 but all of a sudden has a spotlight on it in 4.1. I took it to read that it is a grammatical way. In a grammatical way, it necessarily only applies in 4.1. Correct. I'm telling you what if I disagree with that. Then where does that leave me? Well, then I think you look at the whole agreement, and it goes back to what is this clause doing? You look at his alternative ground. Well, you could go there too, but I would say respectfully before you even arrive at that point, what you would do is look at it and analyze it for the two questions that you asked earlier. Judge Loehr, you asked isn't it – it says it's clarifying. Why can't we just take it at face value that it's clarifying? And Judge Chin, your question said, well, isn't this just talking about the licensed products and what that means to be within the ambit of that definition? And even just looking at that, putting aside the tense of the verb or gerund or whatever it may be, I still think we come to the same end point. It's still simply saying just because a little – let's call it a screw. Just because a screw might fall under the definition of licensed product. For that reason alone, don't read anything into that. That's not the end of the analysis. You're going to have to keep reading this agreement. I'm sorry to split your time, and your time is up. Thank you, Your Honor. Appreciate it. Mr. O'Quinn. Thank you, Judge Loehr. May it please the court, John O'Quinn on behalf of SISCO. So Judge Chin, to your question about what if you disagree with Judge Gilstrap's passing observation that grammatically this was forward-looking, I don't think it affects anything at all. I think it was just a passing observation, and I don't think it really affects how you would interpret these provisions. Because what you have in the section 1.3 is you have a definition, and then you have two clauses or two provisions that follow. The four-clarity clause and the four-further-clarity clause. And I think all those two provisions are doing in a very straightforward way. I think the first one is just simply reserving rights to the extent that something is not licensed. And the second is simply reserving rights to the extent that something is not exhausted. I think Judge Gilstrap was exactly right to think as a practical matter that's only going to – that second one is only going to matter in the context of the forward-looking license. Because that's where exhaustion principles would potentially come into play. And as to one of the questions that I think you asked, it also does, by being there for clarification, make it clear that the definition itself, that first sentence of 1.3, is not a license. And if you didn't have clarity clauses that followed, you might think that it was. Why? Because it says that these are, quote, licensed products. It says that they are at, quote, any time, and it includes ones that are sold to, quote, customers. And so if you didn't have any clarification, you might think that was itself a – that definition itself was a license. But instead, the license is, of course, in 4.1. It is only to Fujitsu, and it is only to licensed products. And so one of the upshots of their position is if you read licensed products the way that they would have you read it, then that would mean that Fujitsu would not have a forward-looking license to products that were specifically and repeatedly accused of infringing, including just one week before they entered into this agreement. And that would not be a reasonable interpretation of the agreement no matter how you come at it. And that's exactly what Judge Gilstrap concluded, which is no matter how you look at this contract, you cannot read this definition of licensed products in a way that would exclude the modulator and receiver devices that were specifically and repeatedly accused, including in the original contentions at 1888, the proposed amended contentions at appendix 2065, in the expert report at appendix 2270, and indeed the second complaint, which was filed literally days before entering into the agreement. That's at appendix 2305. And to say, as Oyster does, well, this was just sloppy and we didn't really mean it, just strains credulity when it's – these were two out of 11 products that were specifically identified in the infringement contention and two of eight that were sold by Fujitsu Optical identified in that second complaint. So I think no matter how you come at this, the definition of licensed products cannot exclude these components. And likewise, if you turn to their fallback argument about the to the extent language, I'd note a couple of things. Number one, this is not an argument that they made to Judge Gilstrap. You can look at appendix 4001 to 4005. It's not in there. You can look at appendix 4720. This is their surreply in the district court. It's not in there. In fact, their argument at 4720 was about substantial embodiment. It doesn't talk about this to the extent language. And I think, Judge Chin, the way that you were reading it in your colloquy with opposing counsel is exactly the right way to read that language. And all it means is that the customers are not getting a broad release. That is the customers of Fujitsu are not getting a broad release to their entire product catalog to the extent that that product catalog includes things that do not include Fujitsu components. So I think the arguments that they did present to the district court, the district court decided exactly correctly. This other argument about to the extent, which they didn't present to the district court, they're simply wrong about. And it just means that a licensed product must be part of the infringement theory. And that's exactly what Judge Gilstrap concluded, by the way. If you look at appendix 43, he said with respect to the— The components themselves, though, do not infringe. So we're talking about releasing a customer not from even though what the customer is selling is a larger product that just happens to incorporate these individual components. It's sort of like it's somehow inoculating the component rather than releasing the customer from true infringement of the ultimate product that they make and sell. So, Judge Chin, I agree that it is a broadly worded license—excuse me, a broadly worded release. And you had identified in the colloquy the on the account of language. That is very broad language. It means because of, but for, due to, and it means that the customers can do essentially anything they want with those licensed product. And there can't be a claim of infringement whatsoever of the licensed patents that in any way depends on that use. And there's no dispute here that their infringement theory depends on that use. And this was the point from appendix 43. As Judge Gilstrab noted, he said, quote, with respect to those accused products, that is the accused products of Cisco and Alcatel-Lucent containing the Fujitsu components, Oyster specifically alleges that the Fujitsu MZM meets the modulator limitation and that the receiver meets the receiver limitation, end quote. And one other point I would make, Judge Chin, is to the extent that Oyster wanted to avoid the situation where Cisco and Alcatel-Lucent would have received a release here, and that's what we're talking about. We're talking about the backward looking release. That's all that's at issue in this appeal. They could have easily done that. They could have carved Cisco and Alcatel-Lucent out of the release and just said, this release will not apply to those entities or will not apply to anything at issue in the Cisco or Alcatel-Lucent litigation. They didn't do that. They instead entered into a very broadly worded release that specifically included customers. And they did so at a time when they were telling Fujitsu one thing in order to induce settlement. That is that certain products, the MZM and the receiver, were, quote, directly infringing. And now they're trying to argue the opposite in order to avoid that result here. Judge Gilstrap correctly interpreted this contract to find that that was not acceptable. So Oyster can still sue Alcatel and Cisco for infringing activities after the effective date of this release? There's nothing in terms of the language of the release that we're talking about that would prevent them from suing. And indeed, those allegations are still pending in the district court. The district court has before it claims against Cisco and Alcatel-Lucent for products that do not include Fujitsu components and for products that post-date the settlement agreement. That's exactly right. Those are still pending. And then that would be subject to exhaustion principles. But those are not at issue in this case. What is at issue in this case are entirely products that predate the settlement agreement and thus were released under Section 3.1. Do you have a final thought on your final minute? Unless the court has further questions, I'm happy to cede back the final 30 seconds. Right. Thank you, Mr. O'Quinn. Thank you, Judge Lurie. Mr. Merzey has two minutes for rebuttal if you need it. Thank you, Your Honor, and I appreciate the two minutes. Just a few short points. The customer release in Section 3.1 does not state that it's based on a component or on a count of a component, unlike the Fujitsu release. It says, but only to the extent such customers have made, offered to sell, or sold or otherwise disposed of the modulator or receiver. So that's the key limitation. Both sides agree now that it's a narrower limitation and you have to apply it. The error the district court made was by changing the words of that to any product that includes a licensed product. Now, under Texas law, Texas law requires that you must specifically mention the claim to be released for a release, and also that the release has to clearly fall within the discharged section. If it does not, you cannot release the claim. And because – so my colleagues mentioned that the circumstances of the settlement should be taken into account. When they are, that's the very reason why the fore further clarity clause and other things are in 1.3 and not only in 4.1. And this case is similar – the law in this case, Texas case, is similar to UNOVA, the California law applied in UNOVA, but stronger. The Texas law here is similar in that they both require reading the contract as a whole and looking at the circumstances surrounding the transaction, the contract. In both cases, it was a settlement with other litigation pending. Texas law, however, goes two steps further. It requires that you can't release claims unless it's clearly within the contract, and that's at Victoria Bank, the case that we cite. And also, for third-party beneficiary claims, it requires that any doubts be resolved against that third party, and that's Resolution Trust that we cite. Here, there is – our claims are only based on the transceiver claim that you saw depicted in both briefs. That's the broadest independent claim, and these receiver components and modulator components are just a couple of elements of that. The district court itself recognized that on 43rd. As you see, the red light has been on. The case is submitted. Thank you.